BLUE et al. v. CONNER. (No. 1614.)

(Court of Civil Appeals of Texas. Amarillo. March 3, 1920.)

1. APPEAL AND ERROR ⬅➡770(1)—WHERE APPELLEES FILED NO BRIEFS APPELLANT'S BRIEF ACCEPTED AS CORRECT.

Where appellees filed no briefs, the appellate court in deciding the assignments presented will, under rule 40 of court (142 S. W. xiv), accept as correct statements of appellants in support of their assignments.

2. ESCROWS ⬅➡1—IRREVOCABILITY AN ATTRIBUTE.

It is an attribute of an escrow that its deposit should be irrevocable by the depositor, pending performance of conditions of its deposit.

3. ESCROWS ⬅➡1—TO RENDER DEPOSIT IRREVOCABLE, THERE MUST BE BINDING CONTRACT.

To render the deposit irrevocable, and thus constitute deposit of the instrument an escrow, there must be a binding contract touching the subject-matter of the deposit.

4. ESCROWS ⬅➡8(1)—DEED IN ESCROW DOES NOT CONVEY TITLE UNTIL CONDITIONS PERFORMED.

A deed delivered in escrow in deposit does not convey title until the conditions are performed, and until that time the contract is executory.

5. FRAUDS, STATUTE OF ⬅➡117—THAT AN EXECUTED OIL LEASE WAS DEPOSITED IN ESCROW DOES NOT TAKE CASE OUT OF STATUTE.

After completing oral negotiations for an oil lease, the landowners deposited in escrow a lease, which recited payment of the consideration, it being agreed that if the abstract of title proved satisfactory the lessee would execute the lease and pay the consideration, but before the lessee had executed the lease and paid the consideration the landowners elected to repudiate contract, *held* that the contract was wholly executory until delivery of the lease, was within the statute of frauds and unenforceable, and the lease, which was a memorandum of the executed contract, was not sufficient to take the case out of the statute.

6. SPECIFIC PERFORMANCE ⬅➡128(1)—WHILE CONTRACT FOR CONVEYANCE OF HOMESTEAD WILL NOT BE ENFORCED, DAMAGES MAY BE RECOVERED.

While an executory contract for the sale or lease of a homestead signed and acknowledged by both husband and wife in the manner required for the conveyance of such property will not be specifically enforced, damages may be recovered for breach of such contract by way of alternative relief.

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Suit for specific performance by W. E. Conner against E. M. Blue and another. From a judgment for plaintiff, defendants appeal. Reversed and rendered.

---

Weeks, Morrow, Weeks & Francis, of Wichita Falls, for appellants.

Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for appellee.

BOYCE, J. [1] This is an appeal from a judgment of the district court, decreeing specific performance of a contract for an oil lease in which the appellee was the lessee and appellants the lessors, on 2½ acres of land in the town of Burkburnett. The principal question of law concerns the effect to be given to the deposit of the oil lease made in pursuance of the contract, with a third party for delivery on payment of the consideration agreed to be paid therefor, and the right of the depositors to withdraw the instrument before performance of the conditions of its deposit. The appellee has filed no briefs, and in the decision of the assignments presented we will accept as correct the statements made by appellants in support of their assignments, in accordance with rule 40 for the Courts of Civil Appeals (142 S. W. xiv).

It appears from the evidence that on July 30, 1918, appellants and appellee reached an understanding by verbal negotiations that the appellants should grant the appellee an oil lease on 2½ acres of land in Burkburnett, which was the homestead of the appellants and 160 acres of land in Oklahoma. The consideration to be paid for the lease on said two tracts of land was the sum of $5,000 cash, with certain agreements as to royalties, time of beginning operations, etc., the details of which were embodied in the written leases, which were prepared as presently stated. As soon as the parties came to such verbal understanding as to the terms of their agreement, they went into the Farmers' State Bank at Burkburnett, and had prepared two separate oil leases, one covering the Burkburnett property and one the Oklahoma property. The instrument affecting the Burkburnett property is entitled "An Oil and Gas Lease." It begins as follows:

"Agreement made and entered into the 30th day of July, 1918, by and between E. M. Blue and wife, Anna M. Blue, of Burkburnett, party of the first part, hereinafter called lessor (whether one or more), and W. E. Conner, party of the second part, lessee, witnesseth: That the said lessor for and in consideration of $5,-000.00, cash in hand paid, the receipt of which is hereby acknowledged, and the covenants and agreements hereinafter contained on the part of the lessee, to be paid, kept and performed, has granted, demised, leased and let and by these presents does grant, demise, lease and let unto the said lessee, for the sole purpose of mining and operating for oil and gas, and laying pipe lines and building tanks, towers, and structures thereon, to produce, save and take care of said products, all that certain tract of land situated in the county of Wichita, state of Texas," etc.

This language is followed by a description of the land, the purpose for which it may be occupied, and many covenants and agreements on the part of the respective parties in reference to the use of such land, payment of royalties, etc. This instrument was signed and acknowledged by Blue and his wife, but was not signed by the lessee. The lease on the Oklahoma property was not introduced in evidence, though it is stated that it was prepared at the same time. It was late in the evening when the papers were signed, and the lessee had not yet examined the abstract of title to the appellant's property, which, according to the oral agreement, was to be examined and approved before the contract should be consummated. According to appellee's version of the transaction, the papers were put in the bank, as he expressed it, "subject to the examination of the abstract, and I was to come in the next morning to examine the title." The banker testified that no statement was made by either the lessor or the lessee as to the disposition that was to be made of the papers, and the appellant Blue testified also to the same effect. But the court found that the leases were delivered to the banker "with the understanding and agreement between the parties that Conner was to call at the bank the next morning to pay the sum of $5,000 to Cooper and get the lease." Later in the evening the appellants notified the banker not to deliver the leases to Conner, and they testified that they also notified Conner of their withdrawal from the transaction, though this was denied, and the court made no finding on this conflict. Conner called at the bank the next morning, and, after examining and approving the abstract of title, tendered to the bank $5,000. This was refused, and the leases were never delivered. The lease contracts referred to were the only writings evidencing the agreement of the parties. The defendants pleaded the statute of frauds, in connection with the acts taken by them evidencing their withdrawal from the agreement prior to the tender by Conner of the $5,000.

[2-5] The first assignment requires us to determine whether, conceding for the purpose of its decision that the evidence is sufficient to show a verbal agreement for deposit of the lease contracts for delivery upon conditions as contended by appellee, the statute of frauds is a complete defense to this action for specific performance of the contract. It is an attribute of an escrow that its deposit should be irrevocable by the depositor, pending the performance of the conditions of its deposit. But the authorities fully support the proposition that in order to render the deposit irrevocable and thus constitute the instrument deposited an escrow, there must be a binding contract touching the subject-matter of the deposit. This would seem to be a reasonable conclusion. A deed so delivered in deposit does not con-

vey the title until the conditions of the deposit are performed. Until that time the contract is executory. If the deposit is adopted as a means of consummating an executory contract, and there is no such contract supported by consideration and evidenced as required by law, so as to bind the depositor, then there is no reason why he should not be permitted to withdraw therefrom before the final consummation of the contract by delivery of the instrument deposited. So if the sale of property is to be consummated by the deposit and delivery of an escrow, and the property is of such nature that a contract for the sale thereof is within the provisions of the statute of frauds, the conveyance deposited on conditions will not be held to be an escrow, unless the agreement for the sale and purchase of the property be in writing so as to bind the seller, and in the absence of a binding contract of sale the depositor may withdraw the conveyance. But "the question how far the contents of a deed of land, executed by a vendor, but delivered in escrow only, may be resorted to in aid of the previous insufficient memorandum of the contract, or to serve as a memorandum of a parol contract, has been much considered." Brown on the Statute of Frauds (5th Ed.) § 354B. This author further says in the same paragraph cited:

"It has been held that if a person who has made a parol agreement to sell land signed an instrument in the form of a conveyance of such land to the vendee, and delivered it in escrow if such instrument contain the terms of the parol agreement, including the consideration, it is a sufficient compliance with the statute of frauds. But this is opposed to the decided weight of authority."

The following authorities will be found in point in the consideration of this question: Simpson v. Green, 212 S. W. 263; Campbell v. Thomas, 42 Wis. 437, 24 Am. Rep. 427; Miller v. Sears, 91 Cal. 282, 27 Pac. 589, 25 Am. St. Rep. 176; Clark v. Campbell, 23 Utah, 569, 65 Pac. 497, 54 L. R. A. 508, 90 Am. St. Rep. 716; Cagger v. Lansing, 43 N. Y. 550; Main v. Pratt, 276 Ill. 218, 114 N. E. 576; McLain v. Healy, 98 Wash. 489, 168 Pac. 1, L. R. A. 1918A, 1161; Seifert v. Lanz, 29 N. D. 139, 150 N. W. 570; Thomas v. Birch, 178 Cal. 483, 173 Pac. 1104; Holland v. McCarthy, 173 Cal. 597, 160 Pac. 1071; Moore v. Ward, 71 W. Va. 393, 76 S. E. 807, 43 L. R. A. (N. S.) 390, and notes, Ann. Cas. 1914C, 263; 10 R. C. L. 622, 16 Cyc. 562; Devlin on Deeds, 313. The Court of Civil Appeals for the Second District, in the case of Simpson v. Green, supra, intimated that a deed so deposited could not be held of itself to be such a memorandum of the contract to sell and purchase as would satisfy the statute, though the decision was not placed wholly on such holding, since it was

decided that the deed did not set out the contract fully, in that the consideration recited in the deed was the sum of $4,500 cash, which would indicate an unconditional agreement on the part of the vendor to pay said sum in cash, while the real agreement was that the sale was subject to the condition that the vendor would furnish an abstract of title, which was to be approved by the vendee, and, further, because a part of the consideration had already been paid by the delivery and acceptance of an automobile at an agreed valuation, and a small sum of cash in addition. The lease deposited in this case does recite the true consideration, and contains all the terms of the agreement between the parties as an executed contract. But, as in the case of Simpson v. Green, supra, it does not show the agreement with reference to the examination and approval of the title, and does not contain the agreement on the part of Conner that he will accept such lease and pay said sum of $5,000 upon approval of the abstract. The lease itself bespeaks an executed contract, intended as an expression of the contract after consummation, and does not show the real contract as it existed at the time of the deposit of the lease; and resort to parol evidence is necessary to establish the contract between the parties at such time. The lessee signed nothing, and was not legally bound to do anything. In practical effect the deposit of the lease in the bank, under the circumstances, was an offer, of which no binding legal acceptance had been made by the lessee, and for the continuance of which he had paid nothing. Under these circumstances we do not think that the lease or conveyance so deposited should be taken as sufficient evidence of the terms of the agreement for the sale and purchase of the property as to deprive the appellants of the right to withdraw such deposit before the performance of the conditions by the lessee.

[6] Appellants advance another reason why there can be no specific performance of the contract, which we are inclined to think is sound: The lease contract was such a conveyance of an interest in the homestead as was required to be executed in the manner provided by law for the conveyance of a homestead in order to bind the wife. Southern Oil Co. v. Colquitt, 28 Tex. Civ. App. 292, 69 S. W. 169. Now, specific performance will not be decreed of an executory contract for the sale of a homestead, though signed and acknowledged by both husband and wife, in the manner required for the conveyance of such property. Jones v. Goff, 63 Tex. 248; Warren v. Jones, 69 Tex. 462, 6 S. W. 775; Blakely v. Kanaman, 168 S. W. 447; Id., 107 Tex. 206, 175 S. W. 674. The authorities referred to state fully the reasons for this rule, and we need not discuss them in detail here. So if the parties had put their

oral agreement into writing and duly signed the same, specific performance of such contract could not have been decreed. Now the real contract between the parties at the time of the appellants' withdrawal therefrom was executory. Though the lease deposited in form evidenced an executed contract, the right of the appellee to enforce its delivery as an escrow depended, as we have seen, on successfully asserting that it was such sufficient evidence of the executory contract of sale between the parties as to comply with the conditions necessary to render the deposit irrevocable. If in reality this instrument is to be taken as an evidence of the executory contract, it should be treated as such contract, it seems to us, when there was a retraction thereof, before it became an executed contract. The reason given by the Supreme Court for the holding in the case of Jones v. Goff, supra, was "that in case of a bond for title the wife did not consent to a conveyance, but to a contract to convey, and that she would be deprived of her right to retract in case the bond could be enforced against her." Warren v. Jones, 69 Tex. 462, 6 S. W. 718. Subsequent to the decision of this case the Supreme Court upheld the validity of a conveyance of the homestead made by an attorney authorized to convey by an instrument properly signed and acknowledged by the husband and wife, and not retracted before execution, saying in this connection that—

"The wife must be allowed the privilege of retracting before the deed is made or the statute is not fulfilled. In case of a power of attorney she has that privilege, and may withdraw her consent at any time before the deed is made by her attorney."

The very question here presented was discussed, but not decided, by the Court of Civil Appeals for the Sixth Supreme Judicial District, in the case of Burnett v. Continental State Bank, 191 S. W. 174. The deed deposited in that case was delivered before retraction by the wife, and the court held that if it be conceded that the wife had the right to retract the deed before actual delivery to the grantee, yet when the delivery was actually made before such retraction she would be bound thereby. We place our decision of the case of the first conclusion announced, for if it were true that specific performance could not be enforced for the reasons we have last discussed, yet if those were the only objections to the enforcement of the contract, damages for its breach might be recovered; and, as the appellee sued for damages in the alternative, a holding against him on this ground alone would only result in a remand of the case for trial on the issue of damages. But if we are correct in the first conclusion, the judgment should be

reversed, and here rendered for the appellants.

We, therefore, for the reasons stated, reverse and render the judgment.