WILSON   v.   WINTERS.

(*Nashville.*    March   15,   1902.)

1. DEED.   *Inoperative for want of delivery and acceptance.*

A deed is inoperative for want of delivery and acceptance, and
   does not, therefore, estop the vendor or his heirs to maintain
   an action against the vendee for recovery of the land, although
   the vendee has paid and given notes for purchase price, and
   gone into possession under it, and made valuable improve-
   ments, where it was signed alone by the husband and left in
   his possession for signature of the wife, who was too sick at
   the time to execute it, and thus remained until the husband's
   death, and was afterwards executed by the wife and delivered
   to the grantee.

Cases cited: Farrar *v.* Bridges, 5 Hum., 411; Davis *v.* Cross, 14
   Lea, 637; Ledgerwood *v.* Gault, 2 Lea, 643.

2. STATUTE OF FRAUDS.   *Memorandum to be effective must be deliv-
   ered.*

And such deed is not effective for want of delivery and accept-
   ance, if sufficient in form, as a memorandum for the sale of
   lands, required by the statute of frauds.   Delivery and accept-
   ance is as essential to such memorandum as to a perfected
   deed.

3. ANSWER.   *Admissions by.*

An admission in his answer that a deed, relied upon by defend-
   ant, that "the deed was not delivered," estops him to insist
   upon its delivery on the hearing.

---

FROM   CHEATHAM.

---

Appeal   from   the   Chancery   Court   of   Cheatham
County.   J.   S.   GRIBBLE,   Ch.

A. E. GARNER and J. J. NAVE for Wilson.

TURNER & DUKE and MICHAEL SAVAGE for Winters.

BEARD, J. J. T. Wilson, now deceased, in his lifetime sold to the defendant, Winters, a tract of land in Cheatham County, for which the latter paid in cash the sum of $900.00, and executed his three purchase money notes to mature in the future. Upon receiving the cash payment and the notes, the vendor prepared a deed by which he and his wife conveyed the property to Winters, reserving a lien only to secure the notes. This deed was in proper form and was duly signed by J. T. Wilson, who was the owner of the land.

The grantee, however, desired that the wife of the grantor should join her husband in its execution, in order that all possible interest she might have in the land be taken out of her. On account of Mrs. Wilson's illness, this could not be done at that time. The grantor, therefore, retained the instrument, saying to the vendee that upon the recovery of his wife, they would go to the county seat, and then she would sign, and both would acknowledge it. No objection was made to this, and thereupon the deed was deposited by the grantor in his safe, where it was found after his death. Upon its discovery

it was signed and acknowledged by Mrs. Wilson, and then delivered to the grantee.

Immediately upon making the purchase, the vendee claiming title, went into possession of the property and made valuable improvements upon it, and was in possession when the present bill was filed. The record shows that, notwithstanding the retention of the deed by the vendor, yet he and the vendee regarded the contract as fully consummated, and that thereafter the vendee, under his purchase, regarded himself as the absolute owner of the land, and the vendor assumed that he had complete title to the money and notes received by him in the transaction.

The present bill is filed by the heirs of J. T. Wilson, the vendor, against the vendee, Winters, and the administratrix of Wilson, who is in possession of such of the purchase money notes as are unpaid, and in it they impeach the claim of the vendee on two grounds—first, that there was no delivery in fact or in law of the deed by Wilson to Winters; and, second, that the contract of purchase and sale of this land was within the statute of frauds, and did not conform to its requirements.

That the delivery of a deed by the grantor to the grantee is essential to pass the title to the grantee, is settled by all the authorities, but it seems equally well settled that a legal delivery, which will accomplish this result, may be made

though the grantor does not, in fact, part with the manual possession of the instrument. *Farrar* v. *Bridges,* 5 Hum., 411; *Davis* v. *Cross,* 14 Lea, 637; *Ledgerwood* v. *Gault,* 2 Lea, 643. But "in such case the grantor should clearly indicate it to be his intention that the instrument should take effect, as a conveyance of his property, and that in retaining possession of the deed, it was merely as bailee for the grantee." 1 Warville on Vendors, p. 572.

The Court of Chancery Appeals report that both the vendor and vendee regarded the contract of purchase as complete, and that though the deed was retained by the vendor to be executed at some time in the future by the wife, and there was never a delivery, in fact, by the vendor, yet there was a delivery in law, so as to vest title in the vendee, and the bill of complainants was dismissed.

We think there was error in this holding. In the first place, upon the facts found by that Court, there was no acceptance of this deed by the vendee, and legal delivery necessarily implies an acceptance. These two things are interdependent. Without acceptance there could be no delivery in law.

In this case the instrument in its then form was not satisfactory to the vendee, and therefore was not accepted by him. The wife of the vendor was required to join in it, as one of the

24 P—26

conveying parties, and it was retained by the vendor until this could be done in the future. In the second place, the pleadings in the case preclude such holding. In his answer to the bill, the defendant, Winters, says, "This deed was not delivered to him during the lifetime of J. T. Wilson," and his co-defendant, the administratrix of Wilson, while insisting upon the sale of the land by her estate as being complete, and upon her right to enforce the collection of the purchase notes, yet in her answer, admits specifically that "the deed was *not delivered* in the lifetime of J. T. Wilson."

But the instrument is equally ineffectual as a memorandum in writing to answer the requirements of the statute of frauds. It was intended by the parties to it as a deed, and not as a mere memorandum of a contract of sale, and, being inoperative, for want of delivery, as a deed, it cannot be made to perform service as a mere memorandum. In this view, the textwriters and the Courts, which have had occasion to rule upon this question, with a single exception, so far as our examination has extended, concur.

In *Cowen* v. *Baldwin,* 16 Minn., 172, it is said: "But it is claimed by the plaintiff that, although the delivery of a deed may not have been sufficient to pass the title to the land, yet it was sufficient to constitute a contract in writing, the specific performance of which the plaintiff

is entitled to enforce. This position cannot be sustained, for to render a written contract to convey land operative, it is just as essential that the contract or memorandum of the contract required by the statute of frauds be delivered as that a deed be delivered in order to convey the title to the land."

In *Parker* v. *Parker,* 1 Gray (Mass.), 409, we find a state of facts corresponding closely with those presented in this record.

The Court in that case said: "The transaction, as respecting the acceptance of the deed by the grantee, or a delivery by the grantor, was not closed.

Something yet remained to be done before the deed was delivered and accepted by William N. Parker. If not so, the deed would have been passed over to William N. Parker at once. But the grantee required the release of dower by Mary Parker. The parties separated without any act having been done equivalent to a delivery of the deed, and nothing further was done to give effect to the instrument as a deed. The instrument was not, therefore, to pass any title or lay the foundation for a title in equity to recover possession of the deed. It was further urged that if the instrument was not valid as a deed, it might be considered as a memorandum in writing, signed by the party agreeing to convey the real estate therein described, and thus au-

thorize a decree in equity to make a conveyance. But in regard to this, the same difficulty exists. As a memorandum in writing stipulating to convey the land, to make it operative, it must have been executed and delivered to the plaintiffs or some one in their behalf."

To the same effect is *Overman* v. *Kerr,* 17 Iowa, 485; *Johnson* v. *Brook,* 31 Miss., 17; *Sanburn* v. *Sanburn,* 7 Gray (Mass.), 142; 1 Devlin on Deeds, Sec. 273, and Brown on Statute of Frauds, Sec. 354. The only exception to this view is found in *Bowles* v. *Woods,* 6 Grat., 78. There an opinion *contra* is expressed, but as shown by Mr. Devlin, in the section of his work just cited, the statement was *obiter dictum,* and, therefore, is not entitled to great weight as authority.

It follows that the decree of the · Court of Chancery Appeals dismissing the bill is reversed, and a decree will be entered here affirming in all respects the decree of the Chancellor. The cause will be remanded to the Chancery Court of Cheatham County for the account ordered by the Chancellor, and such other decrees as may be required in the progress of the case. The costs of the Court below will remain as adjudged there; the costs of the appeal will be paid by the appellant. All future costs will await the determination of the cause.